IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-03031-NRN

LILIANA DAMASCHIN,

     Petitioner,

v.

JUAN BALTAZAR, Warden, Denver (Aurora) Contract Detention Facility;
MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security;
ROBERT HAGAN, Field Office Director, United States Immigration and Customs Enforcement Denver Field Office, Enforcement and Removal Operations;
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
TODD BLANCHE, Acting Attorney General of the United States;
DAVID J. VENTURELLA, Acting Director, United States Immigration and Customs Enforcement,

     Respondents.

---

**ORDER[1]**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court on Liliana Damaschin's ("Petitioner") Petition for Habeas Corpus and Order to (the "Petition"). ECF No. 1. Respondents filed a response, ECF No. 12, which was accompanied by the Declaration of Austin Allbritton, an Immigration and Customs Enforcement ("ICE") Deportations Officer, ECF No. 12-1. Petitioner filed a reply/traverse. ECF No. 13. The Court held a hearing on August 6, 2026. *See* ECF No. 17. For the reasons that follow, the Court **GRANTS** the Petition.

---

[1] The parties consented to magistrate judge jurisdiction, ECF No. 7, and an Order of Reference was entered on July 13, 2026, ECF No. 8.

## BACKGROUND[2]

Petitioner is a 44-year-old female citizen and national of Moldova. ECF No. 1 at 5, ¶ 13. On or about November 22, 2007, Petitioner was admitted to the United States as a H-2B temporary worker with authorization to remain until April 9, 2008. *Id*. ¶ 8. On or about August 1, 2008, Petitioner was convicted in Wyoming state court of driving under the influence and driving without a valid license, and was sentenced to six months of incarceration, with all but one day suspended and credit for one day served. *Id.* ¶ 15. She has had no further contact with the criminal justice system. *Id.*

On or about August 19, 2010, Petitioner was ordered removed from the United States to Moldova by the Immigration Court in Salt Lake City, Utah. *Id.* ¶ 16. On or about August 13, 2014, Respondents placed Petitioner on an Order of Supervision requiring her to report at various times, in-person, virtually, or by telephone. *Id.* at 6, ¶ 17. She was placed on another Order of Supervision on May 18, 2016. ECF No. 12-1 at 3 ¶ 18. She has complied with the terms of the Order of Supervision. ECF No. 1 at 6, ¶ 17. She has also been accorded employment authorization on a continuous basis by Respondents while under the Order of Supervision. *Id.* ¶ 19.

Petitioner is married to a U.S. citizen and has two U.S. citizen children. *Id*. ¶ 20. She has been gainfully employed and supports her family. *Id.*

On or about June 24, 2026 Petitioner reported to the ICE office in Casper, Wyoming as required by her Order of Supervision. *Id.* at 7, ¶ 22. Without notice or explanation, Petitioner was taken into custody by Respondents. *Id.* Two days later, she was transferred to the ICE Contract Detention Facility in Aurora, Colorado, where she

---

[2] The following facts are undisputed unless otherwise noted.

was served with a Notice of Revocation of Release by Acting[3] Field Office Director Calvin Carter. ECF No. 12-1 at 4, ¶¶ 19–20.

Petitioner filed the subject Petition on July 7, 2026. *See generally* ECF No. 1. She brings three claims for violations of her Fifth Amendment substantive due process rights (Counts I–III), three claims for violations of the Administrative Procedure Act ("APA") (Counts IV–VI), one claim for ultra vires action (Count VII), and one claim under the doctrine of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (Count VIII). In addition to other forms of relief, Petitioner requests that the Court order her immediate release from custody.

**ANALYSIS**

A district court may grant a writ of habeas corpus to any person who demonstrates she is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. This includes "[c]hallenges to immigration detention." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). The individual in custody bears the burden of proving that their detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

Petitioner argues, among other things, that Respondents violated her Fifth Amendment right to due process when they re-detained her and revoked her Order of Supervision without any notice "that the factual basis underlying the § 241.13 release determination had materially changed or that ICE had concluded Petitioner's removal had become significantly likely in the reasonably foreseeable future," or that

---

[3] The Notice of Revocation of Release itself identifies Mr. Carter as Assistant, not Acting, Field Office Director.

Respondents "intended to rescind the prior § 241.13 determination, revoke Petitioner's supervised release, or return Petitioner to detention." ECF No. 1 at 15 ¶¶ 56–57. "Instead, Respondents abruptly arrested Petitioner during a routine reporting appointment and placed Petitioner back into immigration detention." *Id.* ¶ 58.

"[W]hen [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day period is referred to as the "removal period." *Id.* Generally, "[i]f the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under" certain regulations. *Id.* § 1231(a)(3). In this case, the relevant regulation that governs the release and revocation of release of a noncitizen subject to a final order of removal is 8 C.F.R. § 241.4.

Pursuant to 8 C.F.R. § 241.4(l), a noncitizen's order of supervision may be revoked upon violation of the conditions of release. *See* 8 C.F.R. § 241.4(l)(1). That does not appear to be an issue in this case. Alternatively, a noncitizen's order of supervision may be revoked by the Executive Associate Commissioner:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i)     The purposes of release have been served;
>
> (ii)    The alien violates any condition of release;
>
> (iii)   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

4

(iv)    The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.* § 241.4(l)(2). "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.4(l)(1); *see Banega v. Warden of Soft Side S. Facility*, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026) ("Courts routinely interpret section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation—meaning that the notice and interview requirements stated in § 241.4([l])(1) also apply to revocation under § 241.4([l])(2)") (internal quotation, alteration, and citation omitted) (collecting cases). This regulation was "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.'" *Virachak v. Baltazar*, No. 26-cv-00391-STV, 2026 WL 746285, at *2 (D. Colo. Mar. 17, 2026) (quoting *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

As an initial matter, § 241.4(l)(2) requires that the revocation of release be made either by the Executive Associate Commissioner or, under certain circumstances, a district director. 8 C.F.R. § 241.4(l)(2). Here, the Notice of Revocation of Release was signed by Mr. Carter as "Assistant Field Office Director." ECF No. 12-1 at 7. "District director" and "assistant/acting field office director" do not appear to be same position. *See, e.g.*, 8 C.F.R. §§ 239.1(a)(1), (33), & (39) (listing the positions separately as officials who can issue a notice to appear). And even if Mr. Carter did have district director authority, § 241.4(l)(2) permits its exercise only when, in the district director's

opinion, revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Commissioner. The record before the Court is devoid that Mr. Carter, or anyone else, made this determination. *See I.P.V. v. Maples*, No. 4:26-cv-00203-SEB-KMB, 2026 WL 2321190, at *2 (S.D. Ind. Aug. 11, 2026). Accordingly, Respondents did not comply with the applicable regulations. *See Olivera Martinez v. Valdez*, No. 26-cv-01120-NYW (D. Colo. May 15, 2026), ECF No. 12 (granting habeas relief where the record did not show an authorized revocation decision or compliant notice and interview), *Kumar v. Mullin*, No. 26-cv-01264-WJM, 2026 WL 1139601, at *3 (D. Colo. Apr. 24, 2026) (finding that respondents violated § 241.4(l) where there was "no indication here that the decision to revoke his supervised release was made by the Executive Associate Commissioner or, if appropriate, a district director").

More troubling, the Notice of Revocation of Release was issued and served on Petitioner two days *after* she was arrested and detained. During the hearing, Respondents could not explain this delay but asserted that it was irrelevant because Petitioner's arrest effectively amounted to a revocation of release. This argument is constitutionally untenable. If Petitioner's Order of Supervision was essentially revoked when she was detained on June 24, 2026, the requirements of § 241.4 obviously were not met because (1) it is undisputed that Petitioner did not receive any notice when she was arrested as to why the Order of Supervision was being revoked and she was not afforded an opportunity to respond at that time, and (2) there is no evidence that the person who arrested Petitioner had the requisite authority to revoke the Order of Supervision.

Respondents also defend themselves by stating that on the same day as ICE served Petitioner with the Notice of Revocation of Release, it provided her with an informal interview, at which Petitioner "had the opportunity to submit documents or a written statement relevant to her detention" but "elected not to do so." ECF No. 12 at 8. However, the informal interview was conducted in Caspar, Wyoming on the morning of June 26, 2026. ECF No. 12-1 at 7–8. Presumably, Petitioner was then transported to Colorado, because that is where Mr. Carter, a Denver ICE agent, served the Notice of Revocation of Release on her. Thus, it appears that the informal interview was conducted *before* the Notice of Revocation of Release was issued. In short, Plaintiff was first arrested, then given an informal interview, and then, finally, notified of the revocation of her release. This is all completely backwards. The Court is left with the impression that Respondents detained Petitioner first and later reviewed her records to land on a reason to revoke her supervision. If this was the case, Petitioner's due process rights were violated because she was arrested and unlawfully detained for no reason, with no notice and no opportunity to be heard.

The Court finds that Respondents violated Petitioner's due process rights when they detained her on June 24, 2026, and then issued the untimely Notice of Revocation of Release on June 26, 2026. In doing so, the Court rejects Respondents' argument that Petitioner has not shown she was prejudiced because she "has not established that the outcome—detention pending removal—would have been any different absent any alleged violation of the regulations." ECF No. 12-1 at 9–10. This argument is unavailing for two reasons. First, the cited "outcome"—the Notice of Revocation of Release—was decided by an individual who was not statutorily authorized to do so. The Executive

Associate Commissioner or, if appropriate, a district director, may come to a different conclusion. Second, Petitioner's failure to provide a written statement or any documentation in response to the revocation of supervision during her informal interview on June 26, 2026, which is cited by Respondents as a point in their favor, only shows the degree of prejudice Petitioner *did* suffer due to Respondents' failure to comply with their own regulations. *Of course* Petitioner did not submit documents or provide a written statement: she had been arrested without warning, detained for two nights, informally interviewed *prior* to being notified of the revocation of her release, and then transported to a detention facility in a different state. What documents was she supposed to present? To whom was she supposed to present them? Petitioner was denied meaningful notice and a meaningful opportunity to respond.[4]

As to the appropriate relief, Respondents argue that any "lack of procedural due process" may be remedied only by "additional process, not immediate release." ECF No. 12 at 10. But "[c]ourts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy is release." *Izquierdo Navarro v.*

---

[4] Because the Court will grant Petitioner relief on the basis of Count One, the Court will not reach Petitioner's remaining claims for relief *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *8 (D. Colo. Oct. 22, 2025) ("Since the Court's ruling on the INA claim will afford Petitioner the entirety of the relief he seeks, the Court need not address Petitioner's remaining arguments."). The Court will not consider Petitioner's request for attorney fees because Petitioner did not comply with the Local Rules of the District of Colorado. *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").

*Bondi*, No. 25-cv-04210-NYW, 2026 WL 468582, at *3 (D. Colo. Feb. 18, 2026); *see also Virachak*, 2026 WL 746285, at *5 (finding respondents' failure to follow the regulations outlined in § 241.4(I) resulted in a due process violation and ordering immediate release).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Petition, ECF No. 1, is **GRANTED** as follows.

1) Respondents are directed to **immediately** release Petitioner subject to the terms of her 2016 Order of Supervision, and

2) The parties shall file a status report within 48 hours of Petitioner's release informing the Court whether further proceedings are required in this case.

Dated: August 14, 2026

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge

9